O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| In Re: | Case No. 5:14-cv-02505-ODW |
| CITY OF SAN BERNARDINO, | |
| CALIFORNIA, | **OPINION** |
| Debtor, | **Appeal from the United States** |
| _____ | **Bankruptcy Court for the Central** |
| SAN BERNARDINO CITY | **District of California, Riverside** |
| PROFESSIONAL FIREFIGHTERS | **Division;** |
| LOCAL 891 | **The Honorable Meredith A. Jury** |
| Appellant, | **Presiding (No. 6:12-bk-28006)** |
| v. | |
| CITY OF SAN BERNARDINO, | |
| CALIFORNIA, | |
| Appellee. | |
| _____ | |

## I.    INTRODUCTION

Appellant San Bernardino City Professional Firefighters Local 891 (the "Union") appeals the "Order Denying Motion of San Bernardino City Professional Firefighters For Relief From the Automatic Stay" entered by the United State Bankruptcy Court for the Central District of California, Riverside Division, on

November 13, 2014. *San Bernardino City Prof'l Firefighters Local 891 v. San Bernardino (In re City of San Bernardino)*, No. 6:12-bk-28006, ECF No. 1287 (Bankr. C.D. Cal. Nov. 13, 2014) (the "*Stay Order*"). The *Stay Order* denied the Union's request for relief from the automatic stay in the underlying chapter 9 bankruptcy of Appellee City of San Bernardino (the "City"). The Union sought relief from the stay to litigate the City's post-petition conduct in state court. For the reasons discussed below, the Court **AFFIRMS** the Bankruptcy Court's order in full.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2012, the City filed a voluntary petition under chapter 9 of the Bankruptcy Code. (AER 1–8.)[1] At that time, the City was in a financial crisis with an estimated budget deficit of $45.8 million. (SER 351–53, 99, 1642.) The City's insolvency is detailed in the Bankruptcy Court's chapter 9 eligibility opinion. *In re San Bernardino*, 499 B.R. 776 (Bankr. C.D. Cal. 2013). The City's first step in stabilizing the financial crisis was negotiating modifications to the collective bargaining agreements of the City's seven public-sector labor unions. (SER 425–29, 518–22.)

One year after the petition date, the City had reached modification agreements with five of the seven labor unions, but the City and Union failed to reach a deal modifying the parties' Memorandum of Understanding (the "MOU"). (*Id.* at 516–17, 853–58, 866–86.) The City and the Union engaged in extensive negotiations and mediation sessions regarding voluntary modifications of the MOU, and those efforts are detailed in a separate opinion from this Court. *See In re City of San Bernardino*, No. 5:14-cv-02073, ECF No. 47 (C.D. Cal. May 7, 2015). On March 4, 2013, the City filed a motion to reject the MOU.

/ / /

---

[1] Citations to the "Appellant's Excerpts of the Record" or "AER" denote the excerpts submitted by the Union. (ECF Nos. 21–25.) Citations to the "Supplemental Excerpts of the Record" or "SER" denote the excerpts submitted the City. (ECF No. 27.) The parties do not dispute any facts on appeal.

On May 23, 2014, the City notified the Union that it would implement cost-reduction measures to modify staffing and equipment provisions in the MOU. (SER 1299–1300, 1682–83.) The City informed the Union that its proposed budget for fiscal year 2014–15 required a reduction of eighteen fire safety positions, and the elimination of a paramedic truck company and a paramedic engine company. (*Id.* at 1302; AER 90–96.) Due to open positions elsewhere in the department, the City told the Union that only four firefighters would lose their jobs. (SER 1302) Another cost-reduction measure was a modification to the MOU's "Constant Staffing" provision. The Constant Staffing provision required that the "Fire Department will maintain its authorized daily constant staffing position vacancies through off-duty personnel on an overtime basis." (*Id.* at 550.) This provision required the City to provide twenty-four-hour staffing, seven days a week on all fire engines and ladder trucks irrespective of existing service level demands. (*Id.* at 1644, 2333–59.) The Constant Staffing provision resulted in $4.2 million in overtime costs in 2013. (*Id.* at 2333–34.) The City believed that implementing a "minimum staffing" provision would save the city between $2–3 million a year. (*Id.*)

On June 30, 2014, the City Council approved the budget for fiscal year 2014–15 and the City began implementing the cost-reduction measures. (*Id.* at 1340, 1342–1436.) Four firefighters received "Reduction in Force" letters. (*Id.*) Despite the notices, no Union members were laid off. The Union members in question exercised their seniority rights to take other open positions and were reinstated to their original positions several months later. (*Id.* at 2696–99.) The City also implemented the minimum staffing model, removed apparatuses from service, and closed a fire station.

On July 21, 2014, the Union filed a "Motion for Relief" seeking a confirmation from the Bankruptcy Court that the automatic stay did not apply to a proposed state-court lawsuit contesting the City's cost-reduction measures, or in the alternative,

/ / /

/ / /

requesting relief from the automatic stay.[2]   (AER 9–170; SER 1171–1285.)   The Union claimed that the City's cost-reduction measures violated numerous provisions of state law, and therefore it would seek an injunction and declaratory judgment in state court to reverse the layoffs, increase staffing, and reopen the closed fire station. (AER 9–170.)   On July 29, 2014, the Bankruptcy Court heard oral arguments on the Union's Motion for Relief, and continued the motion for two months to allow for supplemental briefing.  (*Id.* at 393–473.)   On September 11, 2014, the Bankruptcy Court heard further arguments and then denied the Union's Motion for Relief from the bench.  (*Id.* at 653–751.)  A written order denying the Motion for Relief was entered on November 13, 2014.  (SER 2707–15.)   The Union is now appealing the order denying its Motion for Relief.

### III.   STANDARDS OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a), and is sitting as a single-judge court of appeal.  The traditional appellate review standards apply.  The Court reviews the Bankruptcy Court's conclusions of law *de novo* and its factual findings for clear error.  *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005).   Review under the clearly erroneous standard requires significant deference to the trial court.  *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1024 (9th Cir. 1999).  The Court reviews its own jurisdiction, including questions of mootness, *de novo*.  *Silver Sage Partners, Ltd. v. Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2004).

/ / /

/ / /

/ / /

/ / /

---

[2] This filing was the Union's second request for relief.  The Union first filed a motion for relief on March 8, 2013.  (ECF No. 460.)  The March 8, 2013 motion is addressed in a concurrently filed opinion from this Court.  *See In re San Bernardino*, No. 5:14-cv-02073, ECF No. 47 (C.D. Cal. May 7, 2015).

# IV.    ISSUES ON APPEAL

The Union raises three issues on appeal:

(1) Did "the Bankruptcy Court err[] when it found [11 U.S.C. § 362(a)] enjoined the [Union] from commencing and prosecuting litigation against the City for violations of state law which occurred post-petition[?]";

(2) "[D]id the [B]ankrupcty [C]ourt err when it found 'cause' did not exist to terminate the automatic stay[?]"; and

(3) "[D]id the Bankruptcy Court err when it found the statutes to be enforced were 'procedural' and therefore pre-empted by the Bankruptcy Code?"  (Appellant Br. at 1–2.)

# V.    DISCUSSION

In addition to responding to each of the three issues on appeal, the City also challenges this Court's jurisdiction.  The Court will first address the jurisdictional question and then proceed to the Union's three issues on appeal.  As explained below, the Court must reject each of the Union's arguments.

## A.    Jurisdictional Issue:  Mootness of the Appeal

The City argues that this Court lacks jurisdiction to hear this appeal because the case is moot.  (Appellee Br. at 8.)  This Court cannot exercise jurisdiction over a moot appeal.  *United States v. Pattullo (In re Pattullo)*, 271 F.3d 898, 900 (9th Cir. 2001); *GTE Cal., Inc. v. FCC*, 39 F.3d 940, 945 (9th Cir. 1994) ("The jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution.").  "A moot case is one where the issues presented are no longer live and no case or controversy exists."  *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (B.A.P. 9th Cir. 2014).  "The test for mootness is whether an appellate court can still grant effective relief to the prevailing party if it decides the merits in his or her favor."  *Id.* "If an issue becomes moot while the appeal is still pending, an appellate court must dismiss the appeal."  *Id.* (citing *In re Pattullo*, 271 F.3d at 900).

/ / /

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."  *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012).  "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).  The party asserting mootness bears a "heavy burden" in meeting this standard.  *Id.*

The City claims that all of the laid off employees were reinstated and thus there is no need for prospective relief from a state court.  (Appellee Br. at 8.)  It also argues that the damages caused by the closed fire station and decommissioned equipment "are incorporated in the employees' claims for the reduced wages they may have suffered."  (*Id.* at 8–9.)

The Court rejects the City's mootness argument.  The City unilaterally modified the MOU by implementing cost-reduction measures.  Those measures still remain in effect.  Assuming that the modifications were unlawful, there is a continuing harm to the Union because it lost employment positions, a fire house to employ its members, and equipment used for the job.  Had the City reversed the cost-reduction measures, this appeal would most certainly be moot.  Furthermore, the City still has the ability to lay-off more of the Union's members and thus any claim of voluntary cessation is rejected.  These issues constitute a live case or controversy, and therefore the Court rejects the City's mootness claim.

**B.     Issue 1:  The Automatic Stay and Post-Petition Litigation**

The Union's first issue on appeal is the effect of the automatic stay on prospective litigation challenging post-petition conduct.  The Union argues that the Bankruptcy Court erred as a matter of law in concluding that the automatic stay prohibited the Union's state-court lawsuit that sought to challenge the City's cost-reduction measures.

The key to this first issue is properly framing the question. The Union insists that the only question on appeal is whether 11 U.S.C. § 362(a)(3) is the proper legal basis to deny its Motion for Relief. (Appellant Br. at 9.) In making this argument, the Union claims that the "automatic stay does not enjoin the planned litigation" and the "automatic stay does not apply [to] actions arising post-petition." (*Id.* at 9–10.) For the Court to resolve these questions, it must necessarily consider the "planned litigation" and the City's "actions." The Court cannot decide the issue in a vacuum because, as explained below, the City's underlying conduct drives the inquiry—not all conduct by a debtor-in-possession is treated equally for purposes of obtaining relief from an automatic stay. The Union placed the planned litigation and the City's actions at the forefront of its argument and therefore the Court must consider such conduct in conjunction with the role of section 362(a)(3).

There are three problems with the Union's argument. First, the Union misreads the law in a manner that would render Supreme Court precedent moot. The Union does this by over-generalizing the City's conduct. Second, the automatic stay in this case does apply to the City's post-petition conduct as a matter of law. Third, the Bankruptcy Court did not deny the Union's Motion for Relief on only procedural grounds; it also denied the motion on the merits.

## 1. The City's Actions Were Authorized by Supreme Court Precedent and the Union Misconstrues Those Actions on Appeal.

The Union is specifically appealing the Bankruptcy Court's November 13, 2014 order which denied the Union's Motion for Relief. (SER 2707–15.) The central claim in the Union's Motion for Relief was that the cost-reduction measures that the City unilaterally imposed in June 2014 violated California law. In its Motion for Relief, the Union argued that the "City has yet again taken action in violation of state law and its own Charter under the pretense of federal bankruptcy law preemption   The Bankruptcy Code does not preempt all state law governing public employees." (AER 37.) The Union further argued that the "City cannot act contrary to state law and seek

shelter under the automatic stay." (*Id.*)  The Union claimed that the City "violated the rights of members of the [Union] by failing to meet and confer with the [Union] before taking action to layoff firefighters, in a manner that violates the City's Charter, and demote firefighters, close fire stations, reduce staffing at fire stations and eliminate fire apparatus." (*Id.*)

On appeal, the Union continues to raise the same argument regarding state law violations.  The Union argues that when the City "took the actions which give rise to the Litigation Claims, the City failed to comply with all of these provisions of state law." (Appellant Br. at 20.)  In support of this argument, the Union claims that a "city's unilateral change in a matter within the scope of representation of a recognized union is a *per se* violation of the duty to meet and confer in good faith." (*Id.* at 19.)

Before the Bankruptcy Court and again on appeal, the Union continues to argue that the City's unilateral modifications to the employment terms in the MOU justify its need to pursue state-court claims in a non-bankruptcy forum.  This conduct by the City—the unilateral modifications—serves as the basis for the Union's argument that "[t]he automatic stay does not apply [to] actions arising post-petition." (Appellant Br. at 10 [added emphasis].)  In order for the Court to consider if "[t]he automatic stay does not enjoin the planned litigation" (*Id.* at 9), the Court must address the planned litigation and the City's conduct that serves as the basis for such litigation.  The City's conduct at question, however, is specifically authorized by Supreme Court precedent.

In *N.L.R.B. v. Bildisco & Bildisco*, one of the questions before the Supreme Court was whether "a debtor-in-possession [is] guilty of an unfair labor practice for unilaterally terminating or modifying a collective-bargaining agreement before rejection of that agreement has been approved by the Bankruptcy Court."  465 U.S. 513, 516 (1984).  The debtor-in-possession in the case, after filing a chapter 11 petition, failed to pay health and pension benefits, failed to remit union dues, and refused to pay agreed-upon wage increases as required under a collective bargaining agreement.  *Id.* at 518.  The Supreme Court held that the debtor was entitled to make

these unilateral modifications to the terms and conditions of employment pending the rejection of collective bargaining agreement.  *Id.* at 533–34.  The Supreme Court reasoned that "the authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."  *Id.* at 528.  The Supreme Court ultimately concluded that "while a debtor-in-possession remains obligated to bargain in good faith under [federal labor laws] over the terms and conditions of a possible new contract, it is not guilty of an unfair labor practice by unilaterally breaching a collective-bargaining agreement before formal Bankruptcy Court action." *Id.* at 534.

While *Bildisco* involved chapter 11 bankruptcy, other federal courts and the parties agree that the holdings from *Bildisco* apply to collective bargaining agreements in chapter 9 cases.  *See Ass'n of Retired Employees of the City of Stockton v. Stockton (In re City of Stockton)*, 478 B.R. 8, 23 (Bankr. E.D. Cal. 2012) ("The judicial consensus is that *Bildisco* controls rejection of collective bargaining agreements in chapter 9 cases."); *In re City of Vallejo*, 432 B.R. 262, 272 (E.D. Cal. 2010) ("The Bankruptcy Court properly concluded that a municipality operating under Chapter 9 may utilize 11 U.S.C. Section 365 to reject a CBA, if the municipality can show that the requirements of *Bildisco* are met."); *Orange County Employees  Ass'n v. Orange (In re County of Orange)*, 179 B.R. 177, 183 (Bankr. C.D. Cal. 1995) ("*Bildisco* applies in Chapter 9.").

The City's conduct in this case is precisely the conduct approved by *Bildisco*.  After filing its chapter 9 petition and before receiving formal approval to reject the MOU, the City unilaterally imposed new employment terms in breach of the MOU.  The City imposed a minimum staffing provision, shuffled employees, and eliminated equipment and facilities.  The purpose of the City's modifications was to eliminate burdensome financial obligations—such as unnecessary overtime costs and ailing equipment—that could impede its chapter 9 restructuring.  Neither the City nor the

1  Bankruptcy Court deemed these unilateral modifications as "permanent changes," nor
2  could they under *Bildisco*.

3     The Union is trying to recast the City's conduct as purely state law violations
4  without regard to the clear instructions in *Bildisco*.  Not all conduct by the debtor-in-
5  possession is treated equally, and the conduct at issue in this case is specifically
6  authorized by Supreme Court precedent.  The Union attempts to distinguish *Bildisco*
7  by arguing that the "ability to modify a collective bargaining agreement under
8  *Bildisco* does not, however, result in the abrogation of state law."  (Appellant Br. at
9  25.)  The Union also cites a passage from *Bildisco* that states a "debtor-in-possession
10 . . . is obligated to bargain collectively with the employees' certified representative
11 over the terms of a new contract pending rejection of the existing contract or
12 following formal approval of rejection by the Bankruptcy Court."  (*Id.* at 26 [quoting
13 *Bildisco*, 465 U.S. at 534].)

14    With respect to the Union's citation to *Bildisco*, the Union is correct that a
15 debtor-in-possession must "bargain collective[ly]" over the "terms of a *new* contract,"
16 but a "new" contract is not in quesiton.  Instead, this case involves unilateral
17 modifications to an existing contract which are expressly approved by the Supreme
18 Court.  The Union's claim that *Bildisco* does not allow "the abrogation of state law"
19 overlooks the actual issue on appeal.  This is not a case of carte blanche violations of
20 state law, but instead the preemption of state law under specific Supreme Court
21 precedent and Bankruptcy Code provisions.  *Bildisco* allows the abrogation of state
22 labor law involving modifications of labor contracts during the pendency of a chapter
23 9 case, and that is the only conduct at issue in this case.  The Union's argument is also
24 soundly rejected by *In re City of Vallejo*, 403 B.R. 72 (Bankr. E.D. Cal. 2009).  There,
25 the bankruptcy court found that "[a]ssuming for sake of argument that California law
26 superimposes its labor laws onto section 365, such law would be unconstitutional."
27 *Id.* at 76–77.  The bankruptcy court explained that "incorporating state substantive law
28 into chapter 9 to amend, modify or negate substantive provisions of chapter 9 would

1    violate Congress' ability to enact uniform bankruptcy laws."  *Id.* at 77 (quoting 6

2    *Collier on Bankruptcy* ¶ 903.01 (15th ed. Rev.)).  Relying on the Supremacy Clause,

3    the Bankruptcy Clause, and the Contracts Clause of the Constitution, the bankruptcy

4    Court concluded that Congress' authority to provide debtors the authority to reject

5    executory contracts preempts state law.  *Id.*

6           This Court agrees with the conclusions in *In re Vallejo*.  The Supremacy and

7    Bankruptcy Clauses in the Constitution are non-negotiable and do not allow the Union

8    to rely on state law to escape the bankruptcy process.  The Union is correct that

9    *Bildisco* is not a blank check for the City to violate any state law it wants.  However,

10   the alleged violations of state law in this case were precisely the type of interim

11   violations authorized by the Supreme Court to effectuate the purpose of the

12   Bankruptcy Code.[3]   Allowing the Union to take its claims out of the bankruptcy

13   process would run afoul of *Bildisco*.

14          **2.    State-Court   Litigation   Regarding   Post-Petition   Conduct   is**

15          **Automatically Stayed.**

16          As explained *supra*, the crux of the Union's entire Motion for Relief is rejected

17   by *Bildisco*.  The Union placed the "planned litigation" at the forefront of its appeal,

18   and the Court cannot ignore the substance of that litigation when conducting a *de novo*

19   review of the Bankruptcy Court's decisions.  The Union, however, phrases its issue on

20   appeal in a clever fashion in an attempt avoid the *Bildisco*'s reach.  According to the

21   Union, the first issue on appeals is whether "the Bankruptcy Court erred when it found

22   [11 U.S.C. § 362(a)] enjoined the [Union] from commencing and prosecuting

23   ───────────────

24   [3] The Union also argues that the Bankruptcy Court does not have jurisdiction to adjudicate the
     Union's state-law claims.  (Appellant Br. 14.)  The Court first notes that the Union failed to list

25   this argument as one of its issues on appeal.  The Court also notes that the Union's claim that the
     Bankruptcy Court does not have "core jurisdiction" over the state-law claims is exactly *one*

26   conclusory sentence.  Regardless, the argument is meritless on grounds discussed in this section.
     The Supremacy Clause and the Bankruptcy Code preempt state law in this context.  Claims arising

27   post-petition can receive a different priority of payment under a chapter 9 reorganization, but the
     adjudication of those claims remains part of the core jurisdiction of the bankruptcy court.  *Bildisco*,

28   465 U.S. at 530–31; *Harris v. Whitman (In re Harris)*, 590 F.3d 730,739–40 (9th Cir. 2009).

litigation against the City for violations of state law which occurred post-petition[?]" (Appellant Br. at 1.)   The Union wants to focus on the procedural basis of the Bankruptcy Court's ruling while ignoring the substance of its own motion. Notwithstanding the Court's inability to separate the merits of the issue from a specific procedural inquiry, the Union is still wrong.

The statute in question is the automatic stay provision in 11 U.S.C. § 362. Section 362 is incorporated into chapter 9 proceedings.  11 U.S.C. § 901(a).  Thus, a petition filed under chapter 9 "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case."  11 U.S.C. § 362(a)(1).

The Union argues that the "Bankruptcy Court erred when it found that § 362(a)(3) provides a stay on post-petition litigation arising from the City's post-petition conduct."  (Appellant Br. at 7.)  The rationale behind the Union's argument is two-fold.  First, the Union argues that the automatic stay provision in section 362(a) "is limited to actions that could have been instituted before the petition was filed or that are based on claims that arose before the petition was filed" and "does not include actions arising post-petition."  (*Id.* at 10 [quoting *Bellini Imports, Ltd. v. Mason and Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991)].)  Second, the Union claims that "section 362(a)(3) does not provide protection for the debtor" but "enjoins acts against "property of the estate."  (*Id.* at 9.)  "A 'debtor' and the 'estate' are two separate and distinct entities under the Bankruptcy Code."  (*Id.*)

Both of the Union's arguments are misplaced.  First, the automatic stay prohibits certain post-petition litigation in chapter 9 cases, and this includes the Union's proposed litigation.   As explained *supra*, *Bildisco* authorizes the City's conduct in unilaterally modifying the MOU.  *Bildisco* goes further and instructs that any claim arising from those modifications relates back to the petition date and must be brought before the bankruptcy court.  The Supreme Court explains:

> Actions on claims that have been or could have been brought before the filing of a bankruptcy petition are, with limited exceptions not relevant here, stayed through the automatic stay provisions of the Bankruptcy Code. The Bankruptcy Code specifies that the rejection of an executory contract which had not been assumed constitutes a breach of the contract which relates back to the date immediately preceding the filing of a petition in bankruptcy. Consequently, claims arising after filing, such as result from the rejection of an executory contract, must also be presented through the normal administration process by which claims are estimated and classified. Thus suit may not be brought against the debtor-in-possession under the collective bargaining agreement; recovery may be had only through administration of the claim in bankruptcy.

*Bildisco*, 465 U.S. at 529–30. (internal citations omitted).

Here, the City's unilateral modifications constitute a breach of the MOU and therefore relate back to the petition date. To challenge the unilateral modifications, the Union must present their claims "through the normal administration process by which claims are estimated and classified" and "recovery may be had only through administration of the claim in bankruptcy." *Id. Bildisco* explains the process by which a labor union can challenge post-petition modifications to collective bargaining agreements, and the Union must follow that process here.

Furthermore, Bankruptcy Code sections 365(g) and 502(g) provide that a post-petition rejection of an executory contract relates back to the petition date and is treated as if the breach occurred pre-petition. 11 U.S.C. §§ 365(g), 502(g). The Supreme Court in *Bildisco* recognized this concept. The Court explained: "Damages on the contract that result from the rejection of an executory contract, as noted, must

1  be administered through bankruptcy and receive the priority provided general
2  unsecured creditors." *Id.* (citing 11 U.S.C. § 502(g), 507.)  The bankruptcy court in *In*
3  *re City of Vallejo* elaborated on this conclusion from *Bildisco*, finding that any claim
4  based on a pre-petition labor agreement "including one created by a post-petition
5  breach, is a claim arising prior to the filing of chapter 9 petition."    *In re City of*
6  *Vallejo*, 2009 Bank. LEXIS 970, at*6 (Bankr. E.D. Cal. Mar. 2, 2009).

7         The second part to the Union's argument, which claims that "section 362(a)(3)
8  does not provide protection for the debtor" but "enjoins acts against property of the
9  estate," is meritless.  The Union is attempting to parse statements from the Bankruptcy
10  Court's conclusion to draw nonsensical results.   In rejecting the Union's Motion for
11  Relief, the Bankruptcy Court stated that "[section 362] (a)(3) provides the protection
12  post-petition for the debtor."  (AER 690.)  Bankruptcy Code section 362(a)(3) stays
13  acts seeking to exercise control over property of the bankruptcy estate.  11 U.S.C. §
14  362(a)(3).  The Union believes a reversal is warranted because the Bankruptcy Court
15  concluded that section 362(a)(3) applies to the debtor when in fact that section applies
16  only to the "estate."  (Appellant Br. at 9–10.)   This argument is flawed for two
17  reasons.   First, section 902(2) provides that "property of the estate" also means
18  "property of the debtor."  11 U.S.C. § 902(2).  Thus, there is no meaningful distinction
19  to the Union's argument that section 362(a)(3) is inapposite to the City's
20  circumstances.

21         Second, the Union sought to exercise control over property of the debtor
22  because the Union was seeking an injunction.  The Union wanted to control City
23  property such as the equipment taken out of service and the closed fire house.  The
24  Union's Motion for Relief sought the exact type of conduct stayed under sections
25  362(a)(3) and 902(2)—control over the City's property.  The Union's argument that
26  the Bankruptcy Court erred based on the plain language of section 362(a)(3) ignores
27  other provisions of the Bankruptcy Code and its own requests for relief.   The Court
28  rejects this argument in full.

### 3.     The Motion for Relief was Also Denied on the Merits and that Ruling is not Challenged Here.

The Bankruptcy Court denied the Union's Motion for Relief on two separate grounds.   First, the Bankruptcy Court denied the Motion on the merits.   At the September 11, 2014 hearing, the Bankruptcy Court stated:  "So on the relief from stay, the state law says—actually I wrote it down—Section 3504.5 says, 'they shall give notice and meet.'  I think that's been met no matter what.  They've given notice and they've met."  (AER 689.)

On appeal, the Union only focuses on the *second* reason the Bankruptcy Court gave for denying the Motion for Relief—the application of section 365(a)(3).   The Bankruptcy Court also reasonably found that the City actually complied with state law and therefore the Union had no basis to proceed to state court.  The Union does not challenge this finding by the Bankruptcy Court.   Therefore, even siding with the Union on the second justification—which the Court has not—would not disturb the merits-based holding of the Bankruptcy Court.  The Union had to challenge both of the Bankruptcy Court's justifications for denying the Motion for Relief, and the Union failed to do so on appeal.  This serves as an independent basis for denying the Union's argument.

## C.   Issue 2:  "Cause" to Terminate the Automatic Stay

In addition to seeking relief to file suit in California state court, the Union also requested the Bankruptcy Court to lift the automatic stay.  The second issue on appeal relates to the Union's claim that there was "cause" for the Bankruptcy Court to terminate the automatic stay.

Section 362(d) provides that a bankruptcy court "shall" grant relief from the automatic stay upon a showing of "cause."  11 U.S.C. § 362(d)(1).  "The decision of a bankruptcy court to grant relief from the automatic stay under § 362(d) is reviewed for abuse of discretion."  *Kronemyer v. Am. Contractors Indem. Co (In re Kronemyer)*, 405 B.R. 915, 919 (B.A.P. 9th Cir. 2009).

The Union argues that the "City's failure to comply with state law demonstrates cause to terminate the automatic stay" and the availability of a specialized administrative agency warrant lifting the stay.  (Appellant Br. at 21, 28.)  As discussed *supra*, the Union's state law claims predicated on the City's temporary modifications of the MOU are preempted by federal law and *Bildisco*.  The Union's conclusory argument fails to explain how the Bankruptcy Court abused its discretion.  The Union also fails to address the Supreme Court's directive in *Bildisco* that "claims arising after filing, such as result from the rejection of an executory contract, must also be presented through the normal administration process by which claims are estimated and classified." *Bildisco*, 465 U.S. at 529–30.

As a result, the Court finds that the Bankruptcy Court did not abuse its discretion in denying the Union's request to lift the automatic stay.

**D.     Issue 3:  Bankruptcy Code Preemption**

The third issue on appeal is "did the Bankruptcy Court err when it found the statutes to be enforced were 'procedural' and therefore pre-empted by the Bankruptcy Code?"  (Appellant Br. at 1–2.)  The Union claims that the Bankruptcy Court erred when it made the following statement when issuing its tentative ruling on July 29, 2014:  "So these are procedural rules, and I don't know that the City is violating any of them."  (AER 406.)  The procedural rules in question related to the discovery and timing of the Union's Motion for Relief.  (Appellant Br. at 31.)  According to the Union, "[d]espite the limited scope of a motion under § 362(d), the Bankruptcy Court elected to adjudicate the issues to be litigated in a non-bankruptcy forum."  (*Id.* at 32.)

The Union's argument is not the model of clarity.  The Union's statement of the issue of appeal does not align with the argument in its brief, and it is not clear what Bankruptcy Court actions are being challenged.   It appears that the Union is challenging a mere oral observation which had no bearing on the case.  This befuddled argument is meritless.  Accordingly, the Court rejects this third issue in full.

/ / /

16

1

## VI.    CONCLUSION

2    The Court hereby **AFFIRMS** the Bankruptcy Court's Order Denying Motion of

3  San Bernardino City Professional Firefighters For Relief From the Automatic Stay.  *In*

4  *re City of San Bernardino*, No. 6:12-bk-28006, ECF No. 1287.   The Clerk of the

5  Court shall close this case.

6    **IT IS SO ORDERED.**

7

8  May 7, 2015

9

10  _____

11                        **OTIS D. WRIGHT, II**
             **UNITED STATES DISTRICT JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28